# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LYNNETTE D. BROWN : | |
|     Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. 10-3660 |
| : | |
| THE CHILDREN'S HOSPITAL OF : | |
| PHILADELPHIA, *et al.* : | |
|     Defendants. : | |

## MEMORANDUM OPINION

**Rufe, J.**                                                                                                                            **January 29, 2013**

Plaintiff, Lynnette Brown, filed suit against her former employer, The Children's Hospital of Philadelphia ("CHOP") and two management employees of CHOP, alleging that her employment was terminated in violation of the Family and Medical Leave Act ("FMLA").[1] Plaintiff also alleges that her termination was in retaliation for a claim of racial discrimination in violation of Title VII of the Civil Rights Act of 1964[2] and 42 U.S.C. § 1981.[3] Defendants have moved for summary judgment on all claims. For the following reasons, the motion will be denied.

## I.    FACTS

###     A.    *Undisputed Facts*

Plaintiff, an African-American woman, was hired by CHOP in 2005 as an Outpatient Financial Counselor.[4] She was later employed as Office Administrator in the Emergency

---

[1] 29 U.S.C. §§ 2601, *et seq.*

[2] 42 U.S.C. §§ 2000e, *et seq.*

[3] Plaintiff's Second Amended Complaint also asserted claims of racial discrimination in employment pursuant to Title VII and 42 U.S.C. § 1981. In her opposition to the motion for summary judgment, Plaintiff withdraws those claims. Pl.'s Mem. Opp. Summ. J. at 1 n.2.

[4] Statement of Undisputed Material Facts ("SUMF") ¶ 6.

Department, and then, beginning on September 23, 2007, as one of four Office Coordinators in the Research Business Management Department ("Department").[5] As an Office Coordinator, Plaintiff reported to Defendant Maria Cacciatore, a Department Manager; Ms. Cacciatore reported to Brigid Czyszczon, the Department's Assistant Director.[6]

On October 28, 2008, Plaintiff requested intermittent FMLA leave to care for her father and the request was approved for the period from October 23, 2008 to April 23, 2009.[7] Plaintiff did take intermittent leave during this period. On March 18, 2009, Plaintiff applied for intermittent FMLA leave to care for her son and this second request was approved for the period from March 13, 2009 to September 12, 2009.[8]

On April 27, 2009, Defendants Cacciatore and Czyszczon presented Plaintiff for the first time with a formal written memorandum that set forth specific instances in which they asserted there had been problems with Plaintiff's processing of documents and stating that if Plaintiff's performance did not improve within 30 days she would be terminated.[9] On May 12, 2009, Defendant Cacciatore issued a "Performance Improvement Plan" ("PIP") to Plaintiff, setting forth stated deficiencies with Plaintiff's performance and giving her 30 days to correct these deficiencies.[10] On May 15, 2009, Plaintiff filed a Complaint of Discrimination with the

---

[5] SUMF ¶¶ 7-8.

[6] SUMF ¶¶ 9-10.

[7] SUMF ¶ 76.

[8] SUMF ¶¶ 77-78. Apparently because of a change in policy, this request was made through CHOP's third-party administrator, UNUM.

[9] Defs.' Ex. 18.

[10] Defs.' Ex. 19. The PIP was signed by Defendant Cacciatore on May 12, 2009, and by Plaintiff on May 21, 2009. Id.

2

Philadelphia Commission on Human Relations ("PCHR"); in a letter to the PCHR, CHOP stated that it received a copy of the complaint on June 2, 2009.[11] Plaintiff's employment was terminated on June 12, 2009.[12] The parties have stipulated that "Plaintiff admitted to making errors after being placed on the PIP" and that "Plaintiff admits to making some errors during her employment with CHOP."[13]

  B. *Disputed Facts*

  1. <u>Plaintiff's Performance</u>

Defendant Cacciatore testified that there were problems with Plaintiff's performance as Coordinator "[a]lmost immediately."[14] However, Plaintiff's only written evaluation was a mandatory six-month evaluation dated June 13, 2008 (nearly nine months after she began working in the Department).[15] In this evaluation, Plaintiff received a rating of "Fully Meets" goals and standards in eight of nine categories under the sections of performance and developmental goals and job responsibilities; the ninth category ("serve as customer service representative") was rated as "Partially Meets" the set standard.[16] In the section of core competency, Plaintiff received a rating of "Fully Effective" in all six categories.[17] In the comment section, the evaluation stated:

---

[11] SUMF ¶ 86.

[12] SUMF ¶ 75.

[13] SUMF ¶ 73.

[14] Cacciatore Dep. at 20.

[15] Pl.'s Ex. K.

[16] The ratings in this section are "Does Not Meet," "Partially Meets," "Fully Meets," and "Substantially Exceeds."

[17] The ratings in this section are "Improvement Needed," "Emerging Skill," "Fully Effective," and "Mastery."

3

> Employee's major strengths in the job
> Lynnette is very organized and timely in the processing of all RBO paperwork. She consistently meets specified deadlines of Research Finance to ensure timely reimbursement to the research community.
>
> Focus areas for improvement
> Lynette needs further development in responding to customer questions and inquiries. More specifically identifying issues and resolving or directing customer to the appropriate resource.[18]

The evaluation was signed by Plaintiff and Defendant Cacciatore. Defendant Czyszczon testified in deposition that the positive evaluation was "a mistake" given so as not to "ruin [Plaintiff's] chances" of transferring to a different department, as Plaintiff had expressed interest in doing.[19] After this evaluation, Defendants encouraged Plaintiff to attend training sessions, which it appears she did, and instituted periodic meetings with all Office Coordinators where procedures were discussed.[20] Defendant Cacciatore testified in her deposition that she instructed Plaintiff orally not to use interoffice mail for follow-up on inquiries, but to use email to avoid delays and the possibility of lost documents.[21] Similar instructions were communicated through emails sent by Defendant Cacciatore to Plaintiff in 2009, and some customers sent email complaints to Defendants about interactions with Plaintiff.[22]

---

[18] Id.

[19] SUMF ¶¶ 34-36.

[20] SUMF ¶¶ 42-43.

[21] SUMF ¶ 44.

[22] Defs.' Exs. 14-17, 29. There had been other, similar complaints that preceded the June 13, 2008 evaluation. Defs.' Exs. 5-7.

2. Plaintiff's Complaints of Racial Discrimination and Assertion of FMLA Rights

Plaintiff testified in her deposition that Defendants Cacciatore and Czyszczon requested that Plaintiff not take FMLA leave to help her father in connection with his cancer treatment unless Plaintiff could secure coverage from another Coordinator.[23] Plaintiff also testified that Defendants began "picking apart" her work after the approval of her second FMLA request in March 2009.[24]

On April 1, 2009, Plaintiff met at her request with Nichole Lewis of CHOP's Human Resources department. Ms. Lewis testified in deposition that Plaintiff stated that she was having difficulty communicating with Defendant Cacciatore, but that Plaintiff never complained about race discrimination and never mentioned "FMLA" and that Ms. Lewis did not tell Defendants Cacciatore and Czyszczon about the meeting.[25] In contrast, Plaintiff testified in deposition that she told Ms. Lewis that she thought the problems she was having with Defendant Cacciatore were "because I requested the FMLA for my son, that I had already had FMLA for my dad."[26] Plaintiff also testified that she told Ms. Lewis that Plaintiff "felt like [she] was being discriminated against because of [her] race."[27] Plaintiff testified that she received "hostile" emails from Defendant Cacciatore after she made her FMLA requests and that the emails were

---

[23] Brown Dep. at 206. At another point in her deposition, however, Plaintiff testified that she was able to take time off to care for her father before the PIP was issued in May 2009. Brown Dep. at 220.

[24] Brown Dep. at 221-23.

[25] SUMF ¶¶ 80-84.

[26] Brown Dep. at 239.

[27] Brown Dep. at 453-54; 469-70.

5

"heightened" after the meeting with Ms. Lewis.[28] In addition, Plaintiff has produced affidavits from co-workers who aver that Defendants treated Plaintiff differently and with marked hostility in the months preceding Plaintiff's firing.[29]

## II. STANDARD OF REVIEW

Upon motion of a party, summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[30] A party moving for summary judgment has the initial burden of supporting its motion by reference to admissible evidence showing the absence of a genuine dispute of a material fact or showing that there is insufficient admissible evidence to support the fact.[31] Once this burden has been met, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."[32]

Summary judgment should be granted only if the moving party persuades the district court that "there exists no genuine issue of material fact that would permit a reasonable jury to

---

[28] Brown Dep. at 455.

[29] Plaintiff has submitted the affidavit of Brenda Tilley, a CHOP employee who worked closely with Plaintiff and who avers that toward the end of Plaintiff's employment she observed Defendant Cacciatore treat Plaintiff with "significant hostility" and that Defendants Cacciatore and Czyszczon were "ganging up" on Plaintiff. Tilley Aff. ¶¶ 10, 18. Plaintiff also has submitted the affidavit of Gloria Gail Newsome, a former CHOP employee who worked closely with Plaintiff and who stated that Plaintiff and Defendant Cacciatore appeared to have a good rapport until the months preceding Plaintiff's termination, at which time Plaintiff showed Ms. Newsome emails from Defendant Cacciatore "that were 'cutting' in their tone, and were unsupportive of any requests that Plaintiff made of Maria in order to accomplish the tasks associated with Plaintiff's position as Office Coordinator." Newsome Aff. ¶¶ 8-9.

[30] Fed. R. Civ. P. 56(a).

[31] Fed. R. Civ. P. 56(c).

[32] Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006).

find for the nonmoving party."[33] A fact is "material" if it could affect the outcome of the suit, given the applicable substantive law.[34] A dispute about a material fact is "genuine" if the evidence presented "is such that a reasonable jury could return a verdict for the nonmoving party."[35]

In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor.[36] Further, a court may not weigh the evidence or make credibility determinations.[37] Nevertheless, the party opposing summary judgment must support each essential element of his or her opposition with concrete evidence in the record.[38] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[39]

## III. DISCUSSION

### A. FMLA Retaliation

A retaliation claim under the FMLA requires Plaintiff to demonstrate first a *prima facie* case, meaning that (1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of

---

[33] Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988).

[34] See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

[35] Id.

[36] Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).

[37] Boyle v. Cnty. of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998).

[38] Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

[39] Anderson, 477 U.S. at 249-50 (citations omitted).

7

rights.[40]  The burden of production then shifts to Defendants to provide a legitimate, nondiscriminatory reason for the adverse action.[41]  If Defendants can do so, then Plaintiff must identify direct or circumstantial evidence that would permit a reasonable factfinder to disbelieve Defendants' reason.[42]

For purposes of the summary judgment motion the parties do not dispute that Plaintiff requested intermittent FMLA leave[43] or that Plaintiff's termination constitutes an adverse employment action.[44]  The third element of the *prima facie* case, causation, must be considered "with a careful eye to the specific facts and circumstances encountered."[45]  If the protected activity and the adverse action were so close in time to be unusually suggestive, an inference of discrimination may be raised.[46]  However, if the temporal proximity is not unusually suggestive, then a court looks to the evidence as a whole to determine whether an inference of discrimination has been raised.[47]

In this case, the Court finds sufficient evidence of causation by which Plaintiff may establish a *prima facie* case.  Plaintiff argues particularly that heightened criticism of her work

---

[40] Dove v. Comm. Educ. Ctrs. Inc., No. 12-4384, 2012 WL 5403508, at *4 (E.D. Pa. Nov. 5, 2012) (citing Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 302 (3d Cir. 2012)).

[41] Lichtenstein, 691 F.3d at 302 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)).

[42] Id. (citing Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)).

[43] SUMF ¶¶ 76-79.  The FMLA grants employees the right to take leave on an intermittent or reduced schedule basis, instead of full-time leave.  29 U.S.C. § 2612(b); 29 C.F.R. § 825.203.

[44] See Mieczkowski v. York City Sch. Dist., 414 F. App'x 441, 445 (3d Cir. 2011).

[45] Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 n.5 (3d Cir. 2000).

[46] Lichtenstein, 691 F.3d at 307.

[47] Id. (citation omitted).

began after her second request for FMLA was approved in March 2009, and escalated again after her meeting with Ms. Lewis on April 1, 2009. Defendant Czyszczon testified that she decided to administer written discipline to Plaintiff in April 2009.[48] Thus, the timing is somewhat suggestive of causation, and when considered with the overall circumstances, Plaintiff has produced sufficient evidence to create an inference of a causal link between her seeking FMLA leave and her termination.[49]

The burden then shifts to Defendants, and the Court has no difficulty in concluding that Defendants have produced sufficient evidence of a legitimate reason for Plaintiff's termination: that her performance in a customer-service oriented position was inadequate, generating complaints from customers, and that Plaintiff failed to improve. Therefore, Plaintiff must be able to cast doubt upon this explanation. The Court finds Plaintiff has produced sufficient evidence to do so.[50]

Plaintiff has produced evidence that Defendants made negative comments about her requests for intermittent FMLA leave and objected to her taking such leave without arranging for coverage. There is also evidence that after more than a year without any formal notice of problems with her performance, Defendants Cacciatore and Czyszczon began to criticize her work shortly after her second leave request. Defendants contend that there were problems with Plaintiff's performance from the time she began working in the Department. This contention is

---

[48] SUMF ¶ 52. Ms. Czyszczon testified that the reason was Plaintiff's "continued failed performance," but, as already discussed, the quality of Plaintiff's performance is contested.

[49] For timing to be "unusually suggestive" it is generally measured in a few days or perhaps a few weeks, but not, for example, two months. Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 760 (3d Cir. 2004) (internal quotation omitted). Thus, "timing plus other evidence may be an appropriate test" in this case. Id. (internal quotation omitted).

[50] See Lichtenstein, 691 F.3d at 310.

9

undercut, however, by the positive evaluation Defendants gave Plaintiff after she had been working in the Department for almost nine months.[51] Defendants Cacciatore and Czyszczon have explained that this evaluation was a mistake and was given to assist Plaintiff in possibly transferring to another position which would be a better fit for her. A factfinder certainly could credit this explanation. A factfinder also could disbelieve this explanation, and as the Supreme Court has explained, "[t]he factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the *prima facie* case, suffice to show intentional discrimination."[52] Thus, rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination.[53] Where, as here, the parties' credibility is at issue on crucial points of evidence, summary judgment must be denied.[54]

    B.    *Retaliation for Complaint of Discrimination*

Defendants also move for summary judgment on Plaintiff's Title VII and § 1981

---

[51] Plaintiff's evaluation from her position at CHOP before transferring to the Department was also favorable. Pl.'s Ex. L. Ms. Newsome, her former co-worker, has averred that she "frequently observed Plaintiff putting forth extra time and effort in her position as Office Coordinator, and managing numerous responsibilities at one time." Newsome Aff. ¶ 7. In addition, the fact that Plaintiff admits to making mistakes during the course of her employment does not mean that she concedes her performance was inadequate, and a factfinder could find that the admission enhances her credibility.

[52] St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993). Defendants argue that past positive performance reviews cannot be used to establish that more recent criticism was pretextual. Defs. Reply Mem. Supp. Summ. J. at 13-14. This argument misses the mark. Defendants Cacciatore and Czyszczon did not testify that Plaintiff had been doing a good job but that her performance deteriorated; they testified that Plaintiff's performance was always poor, a contention belied by their earlier evaluation of Plaintiff, which creates a credibility question.

[53] Id.

[54] Plaintiff also asserts a claim of interference with her FMLA rights, arguing that her termination prevented her from taking leave to care for her son. The Third Circuit has held that "firing an employee for a valid request for FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation against the employee." Erdman v. Nationwide Ins. Co., 582 F.3d 500, 509 (3d Cir. 2009). The motion for summary judgment will be denied as to the interference claim.

retaliation claims. Section 704(a), 42 U.S.C. § 2000e-3(a) of Title VII states:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made by this title, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title.

An employer is prohibited from taking retaliatory action against an employee when that employee complains of a practice that would violate Title VII.[55] The Court employs the same burden-shifting framework as for the FMLA claim.[56] Here, the parties do not dispute that Plaintiff suffered an adverse employment action or that Plaintiff filed a formal complaint of discrimination on May 15, 2009 (after the PIP was issued). The parties do dispute whether or not Plaintiff told Ms. Lewis on April 1, 2009, that Plaintiff felt that she was being discriminated against on the basis of her race. For purposes of summary judgment, the Court must accept Plaintiff's version of events. The question then becomes whether there is sufficient evidence by which Plaintiff can establish a causal link between her complaints of discrimination and the termination of her employment.

Defendant argues that even if Plaintiff did complain of racial discrimination to Ms. Lewis, Ms. Lewis did not make the decision to fire Plaintiff and there is no evidence that Defendants Cacciatore and Czyszczon were aware of this complaint. Although there is no direct evidence of such knowledge, it is undisputed that Defendants Cacciatore and Czyszczon worked

---

[55] The analysis with regard to a retaliation claim is the same under Title VII and Section 1981 See Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001) (explaining the requirements that a plaintiff must satisfy in order to sufficiently allege a claim for retaliation under § 1981).

[56] Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 286 (3d Cir. 2001) (holding that in order to establish a *prima facie* retaliation claim, plaintiff must show that: "(1) the employee engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action").

11

with Ms. Lewis to create the PIP and that Ms. Lewis was in the meeting when the PIP was presented to Plaintiff.[57] If a factfinder were to credit Plaintiff's testimony that Plaintiff told Ms. Lewis that she felt Defendants were discriminating against her because of her race, and disbelieve Ms. Lewis on this point, the factfinder reasonably could infer that Defendants Cacciatore and Czyszczon became aware of the complaint while working with Ms. Lewis to develop the PIP, and the complaint may have influenced Defendants' actions. In this regard, the Court notes that the hearing panel that decided Plaintiff's internal grievance questioned why there had been no mid-year review of Plaintiff's performance in January or February 2009 and why the PIP gave Plaintiff one month to improve, when the PIP form permits a range of one to three months.[58] A reasonable factfinder therefore could conclude that Defendants' minds had been made up before issuing the PIP, and determine that Defendants were retaliating against Plaintiff because of her complaint of discrimination.[59] Viewing the evidence in the light most favorable to Plaintiff, and considering the timing of the complaint and the attendant circumstances, Plaintiff has adduced sufficient evidence to demonstrate a causal connection for purposes of establishing a *prima facie* case of retaliation based upon a complaint of racial discrimination. For the reasons explained in the analysis of the remaining elements of the burden-shifting analysis in connection with the FMLA retaliation claim, summary judgment will be denied on this claim as well.

---

[57] SUMF ¶¶ 60, 63.

[58] Pl.'s Ex. BB. The panel upheld Plaintiff's termination with "deep reservations." Although the hearing panel's decision may not constitute direct evidence, it does serve to demonstrate that the evidence of Plaintiff's deficient performance is not as overwhelming as Defendants argue.

[59] The Court has not relied on the filing of the PCHR complaint after the PIP was issued.

## IV. CONCLUSION

Because factual disputes render this case ill-suited to summary resolution, Defendants' motion is denied. An order will be entered.